**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| COLLEEN MEYERS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 CV 00582 |
| | ) | |
| v. | ) | Honorable Lindsay C. Jenkins |
| | ) | |
| FIGURE LENDING LLC and | ) | |
| SPECIALIZED LOAN SERVICING LLC, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiff Colleen Meyers, a victim of identity theft, files this complaint against Defendants Figure Lending LLC and Specialized Loan Servicing LLC under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, ("ICFA"). Defendants unlawfully and repeatedly accessed Plaintiff's consumer report, viewing her personal financial information and credit history without justification, a permissible purpose, or authority. Defendants also made persistent demands for payment and threatened foreclosure, even after a fraud investigation had been completed in Plaintiff's favor and a Release and Satisfaction of Mortgage had been sent and recorded.

*Parties*

1. Plaintiff is a citizen of the State of Illinois who resides within this district.

2. Defendant Figure Lending, LLC ("Figure") is a Delaware limited liability corporation with a registered agent located in Springfield, Illinois. Figure employs a 100% online application and loan process that provides home equity line of credit funding to homeowners without in-person appraisals, promising "savings and efficiencies."

1

3. Defendant Specialized Loan Servicing LLC ("SLS") is a Delaware limited liability corporation with a registered agent located in Park Ridge, Illinois. SLS is a loan servicer retained by Figure to process, collect, service, and foreclose its consumer home equity line of credit accounts.

### Jurisdiction and Venue

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's federal claims arise under 15 U.S.C. § 1681 *et seq*.

5. Supplemental jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' conduct related to Plaintiff occurred in Cook County, Illinois, through collection efforts, false statements, and credit reporting on a fraudulent home equity line of credit for Plaintiff's Glencoe, Illinois home.

### Factual Allegations

7. In or around January of 2022, unbeknownst to Plaintiff, Figure opened a home equity line of credit (HELOC) in Plaintiff's name in an amount up to $136,793.58, thereby securing a fraudulent mortgage on Plaintiff's home located at 418 Adams Avenue, Glencoe, Illinois 60022.

8. There was no in-person closing, as all transactions related to the Figure HELOC were completed online.

9. The Figure HELOC was treated by Defendants as a consumer loan transaction, secured by real property owned by Plaintiff located in the State of Illinois, and Plaintiff is an Illinois consumer.

10. In March of 2022, Plaintiff received a statement and payment request from Figure at her home address on the HELOC.

11. Plaintiff and her husband, Tony Meyers, began a fraud dispute investigation with Figure, reaching out via telephone and e-mail. Figure confirmed they were aware of the issue.

12. On or about March 7, 2022, Figure released the HELOC and any secured interest in the Plaintiff's home, preparing and executing a Release and Satisfaction of Mortgage.

13. According to the date stamp, the Satisfaction of Mortgage was filed with the Cook County Recorder of Deeds on March 10, 2022.

14. On or about March 24, 2022, Figure e-mailed Plaintiff's husband from fcu_support@figure.com and advised their records indicated the account had already been deleted from the credit reporting bureaus due to fraud, meaning the account should no longer be reporting as Plaintiff's loan responsibility or as a tradeline on her credit.

15. At some point thereafter, despite the results of its fraud investigation and confirmation that no monies were owed to it by Plaintiff and despite advising Plaintiff they had deleted the account from credit reporting, Figure assigned the fraudulent HELOC to servicing with SLS.

16. SLS began sending a series of notices to Plaintiff stating that her HELOC was in "serious default."

17. As they had done with Figure, Plaintiff and her husband, Tony Meyers, began a fraud dispute investigation with SLS, reaching out via telephone and e-mail and in June of 2022, sending a copy of the Release and Satisfaction of Mortgage to SLS to demonstrate Figure had already determined Plaintiff was not liable for the account and claimed to have deleted it from credit reporting.

3

18. Rather than close the account, SLS sent Plaintiff repeated notices threatening her with foreclosure and demanding payment, reported her as delinquent to the credit reporting bureaus, and referred Plaintiff for debt collection with Marinosci Law Group, P.C.

19. Plaintiff filed a police report with the Glencoe Police Department and began yet another round of disputes, this time sending Qualified Written Requests to Figure, SLS, and the three credit reporting bureaus (Equifax, Experian, and TransUnion), and disputing the debt with Marinosci Law Group, P.C.

20. On or about January 25, 2023, Figure sent Plaintiff a letter confirming it had instructed SLS to cease collection efforts and delete the tradeline information previously reported to Equifax, Experian, and TransUnion, even though Figure had told Plaintiff almost a year earlier that the account would not appear on her credit.

21. On or about February 13, 2023, SLS sent Plaintiff a letter advising that, "Upon review, it was determined that Figure inadvertently transferred the HELOC to SLS as an active loan account on June 7, 2022." SLS did not comment on why it failed to investigate the Satisfaction of Mortgage document for Plaintiff's account sent to SLS on June 20, 2022.

22. But on February 23, 2023, SLS sent additional correspondence to Plaintiff which stated that, while SLS had determined not to pursue a foreclosure action, "you may continue to be financially responsible for this debt (or note)" and advised Plaintiff should consult an attorney for questions about potential tax liabilities. In early 2024, SLS sent Plaintiff a Form 1099-C, stating that $145,670.10 in debt had been discharged and that Plaintiff had been personally liable for repayment of the debt.

23. Figure and its affiliates made multiple credit inquiries regarding Plaintiff, pulling Plaintiff's consumer report twice in January of 2022 and twice after Figure claimed it had already

closed the fraudulent HELOC and deleted the tradeline. Even after this lawsuit was filed, Figure pulled Plaintiff's report yet again.

24. SLS pulled Plaintiff's consumer report on October 4, 2022, after Plaintiff had already disputed the account, informed SLS of the identity theft, and sent it the Release and Satisfaction of Mortgage filing.

25. SLS hired property preservation inspectors to drive-by the Plaintiff's home, take photographs, and report its occupancy status.

26. Plaintiff has experienced significant emotional distress, anxiety, stress, lost time, worry, aggravation, and embarrassment resulting from the Defendants' credit reporting, impermissible credit pulls, collection efforts, 1099-C issuance, and threats of foreclosure that would result in the loss of her family's home. Plaintiff was subjected to a six-figure additional purported indebtedness and referred to a collection law firm, receiving repeated harassing correspondence stating, "serious default," "delinquency," and "referred to foreclosure." Her credit score dropped due to being reported as delinquent.

27. Public records were filed with Cook County claiming Plaintiff incurred a mortgage debt of $135,793.58, which is simply untrue. Her mailbox was flooded with "save your home, loss mitigation option" plans.

28. Plaintiff's financial and residential information, for which she has a reasonable expectation of privacy, was shared with third party debt collection agents, property preservation companies, and hazard insurance companies. Both Figure and SLS assigned forced place insurance plans to Plaintiff's home. Plaintiff had to discuss this problem with others, including her local police, and lost productive time, receiving numerous default notices and mailings over multiple months. Plaintiff is liable for payment of certified mailing and postage costs, submitting

qualified written requests and dispute correspondence to Defendants and the credit reporting bureaus.

29. Liability for a fraudulent loan (and delinquent reporting of that loan) was seen by Plaintiff's actual lenders in their account reviews and credit extension considerations.

30. Plaintiff's injuries are concrete as her credit worthiness and account history information was repeatedly accessed by Defendants without a permissible purpose. Defendants' conduct in obtaining and viewing Plaintiff's consumer reports without a permissible purpose is an invasion of privacy analogous to the common law tort of intrusion upon seclusion. In essence, Defendants repeatedly examined Plaintiff's financial history without authority, akin to rifling through her wallet or reviewing her bank account statements.

31. In fact, Congress enacted the FCRA to protect consumers from precisely the conduct described in this Complaint, to ensure fair and accurate reporting, promote efficiency in the banking system, protect consumer privacy, and to further ensure "that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy" because "consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a).

## COUNT I
### *Violations of the Fair Credit Reporting Act*

32. Plaintiff restates, realleges, and incorporates herein by reference paragraphs 1-31 as if set forth fully herein.

33. Plaintiff is a "consumer," as that term is defined by 15 U.S.C. § 1681a(c).

6

34. To safeguard consumer credit information, Congress drafted 15 U.S.C. § 1681b, which makes it unlawful to furnish, obtain, or use a consumer's credit information without a permissible purpose.

35. Specifically, § 1681b provides the following circumstances under which a consumer report may be furnished:

> (3) To a person which it has reason to believe—
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> (B) intends to use the information for employment purposes; or
>
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
>
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
>
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
>
> (F) otherwise has a legitimate business need for the information—
>
> (i) in connection with a business transaction that is initiated by the consumer; or
>
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

36. Defendants did not have a permissible purpose, as that term is defined in § 1681b, when Figure or SLS accessed Plaintiff's consumer report on, at minimum, the following occasions: October 4, 2022, October 12, 2022, November 3, 2022, February 14, 2024. Defendant Figure had also previously viewed Plaintiff's consumer report on January 15, 2022 and January 26, 2022,

7

even though Plaintiff had never applied for a loan, and only discovered those pulls after receiving notice of the fraudulent loan. Figure already represented that it had deleted any tradeline associated with the fraudulent loan but continued credit pulls. SLS had no authority to pull reports for account reviews as it had no basis to establish or continue to report a tradeline for Plaintiff.

37. Defendant SLS conducted an improper account review on October 4, 2022, as there was no outstanding HELOC balance to collect, Plaintiff had already disputed the debt with both Figure and SLS representatives, and Figure had declared the account closed for fraud, ordered tradeline deletion, and issued a Release and Satisfaction of Mortgage. Plaintiff had also informed both Defendants that she owed no debt and was an identity theft victim when SLS purported to pull Plaintiff's credit for an "account review."

38. Defendants had no legitimate business need to access Plaintiff's consumer report as Plaintiff did not apply for credit, there was no existing account between Plaintiff and Defendants, and no lawful tradeline to report.

39. Defendants' use of Plaintiff's consumer report does not fall under any of the statutorily granted purposes enumerated in § 1681b.

40. Defendants impermissibly viewed Plaintiff's consumer report, as that term is defined in § 1681a(d), "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."

41. Defendants are required to establish reasonable procedures that would prevent its employees and agents from being used to obtain a consumer report under false pretenses and as specifically authorized, pursuant to 15 U.S.C. § 1681b(f).

42. Defendants failed to establish appropriate procedures that would prevent their authorized agents from obtaining a consumer report under false pretenses and as specifically authorized, pursuant to 15 U.S.C. § 1681b(f).

43. Reasonable procedures in this case would have been to prohibit continued access to Plaintiff's consumer report.

44. Defendants unlawfully certified that they had a legitimate business need for the information contained within Plaintiff's consumer report (e.g., (a) they intended to use the information in connection with a credit transaction involving the Plaintiff and involving the extension of credit to, or review or collection of an account of, the consumer, or (b) to review an account to determine whether Plaintiff continued to meet the terms of said account).

45. Neither Defendant had a reason to pull Plaintiff's credit report as the mortgage release and fraud finding terminated any possible existing relationship between Figure and Plaintiff or SLS and the Plaintiff. Therefore, Defendants' pulls were without a legitimate business need and not in connection with any credit transaction.

46. Defendants' impermissible pulls violated Plaintiff's privacy rights and were willful, giving rise to liability under 15 U.S.C. § 1681n(a).

47. Plaintiff has the right to control how her financial information is viewed by third parties and here, despite repeatedly informing Defendants there was no collectable loan, Defendants continued to access Plaintiff's consumer report.

48. Defendants invaded Plaintiff's financial privacy, intruding upon Plaintiff's seclusion to Plaintiff's detriment and causing distress, and leading Plaintiff to feel embarrassment and potential negative credit implications associated with multiple credit inquiries. It is highly offensive to the reasonable person for a company like Figure to continue accessing Plaintiff's

9

private financial information (and tell its loan servicer SLS to do the same) after confirming Plaintiff's identity theft had occurred and closing any account. It is also highly offensive to the reasonable person for a loan servicer like SLS to ignore Plaintiff's dispute and mortgage release and continue performing account reviews when it knew or should have no there was no open account.

49. Defendants are liable under 15 U.S.C. § 1681n for willfully and/or recklessly violating § 1681b and/or under 15 U.S.C. § 1681o for negligently violating § 1681b.

WHEREFORE, Plaintiff asks that this Court enter judgment in her favor and against Defendants Figure Lending, LLC and Specialized Loan Servicing LLC and award damages as follows:

(A) Actual damages, damages of not less than $100 and not more than $1,000, and punitive damages pursuant to 15 U.S.C. § 1681n if Defendants are found to have committed willful or reckless conduct;

(B) Actual damages, pursuant to 15 U.S.C. § 1681o, if Defendants are found to have committed negligent conduct;

(C) Reasonable attorney's fees, litigation expenses, and costs incurred in bringing this action; and

(D) Any other relief this Court deems appropriate and just under the circumstances.

## COUNT II
*Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act*

50. Plaintiff restates, realleges, and incorporates herein by reference paragraphs 1-31 as if set forth fully herein.

51. 815 ILCS 505/2 of the ICFA provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described

in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

52. Both unfair and deceptive acts are unlawful under Section 2 of the ICFA.

53. A consumer is defined under the ICFA as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

54. Plaintiff did not agree to contract with Defendants, but Defendants treated Plaintiff as a "consumer," as the ICFA defines that term, sending her billing statements, invoices, loan documents, and collection notices in the course of Illinois trade or commerce, and also opening consumer account tradelines with the credit reporting bureaus.

55. Plaintiff is therefore a "consumer" but also, a "person" as the ICFA provides that, "[a]ny **person** who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a). Emphasis added.

56. Defendants' conduct, as alleged herein, impacts the marketplace and consumer protection concerns generally because failure to follow identity theft protocols or have proper procedures in place to address complaints like the Plaintiff's has impact beyond just the Plaintiff's situation. For example, as noted on Figure Lending's website, account fraud is a frequent enough occurrence that it is addressed on the company's legal requests page ("Fraud and Law Enforcement Investigations: Fraud and Law enforcement investigations should contact our Financial Crimes team at fraud@figure.com;" "Customer Requests and Fraud Reporting: For assistance with your account or to report fraud, contact Figure at (888)-819-6388 or email loans@figure.com for fraud or sop@figure.com for account records." https://www.figure.com/legal-requests-policy/.

11

Plaintiff's loan is not the singular loan serviced by SLS and therefore, fraud procedures between Defendants are essential for the appropriate servicing of their consumers' accounts and credit reporting procedures.

57. Proper servicing of mortgage loans and proper recording of mortgage liens in response to allegations of identity theft and fraud is a matter of general consumer protection concern. Failure to timely address mortgage fraud leads to clouded title, forced place insurance, property preservation assignments, and potential foreclosure.

58. Defendants' transfer and servicing practices are established en masse and SLS unfairly and deceptively retains property preservation services and conducts other loan default practices even after receiving a fraud alert from the consumer. Plaintiff is also not the only consumer to complain about SLS's responsiveness to identity theft disputes.

59. Defendant Figure unfairly retained Defendant SLS to service and collect an alleged HELOC mortgage debt from Plaintiff when it had already confirmed the account was fraudulent and Plaintiff had not defaulted. This retention improperly occurred after Figure advised Plaintiff the HELOC loan had been closed, her credit report would be fixed to remove the negative reporting, and she bore no responsibility for the account.

60. Defendant Figure is responsible for its own acts, as well as the acts of its retained servicer SLS.

61. Defendants committed unfair practices in contravention of 815 ILCS 505/2 in continuing to demand payment on an account they knew to be fraudulently opened and for which Figure had already recorded a Release and Satisfaction of Mortgage.

12

62. Defendants committed unfair practices in contravention of 815 ILCS 505/2 in threatening foreclosure on an account they knew to be fraudulently opened and for which Figure had already recorded a Release and Satisfaction of Mortgage.

63. Defendants committed unfair practices in contravention of 815 ILCS 505/2 in referring Plaintiff to a collection agency, assessing property preservation and other fees, and threatening legal action and tax consequences on an account they knew to be fraudulently opened and for which Figure had already recorded a Release and Satisfaction of Mortgage.

64. Rather than close the account as Figure claimed it had done, Defendants pulled Plaintiff's credit report repeatedly and SLS reported Plaintiff as delinquent to the credit reporting bureaus. Plaintiff's actual creditors performing legitimate account review inquiries would have seen the negative (and false) SLS credit reporting. Plaintiff's credit score dropped approximately 133 points during the time period of SLS's negative (and false) credit reporting.

65. In determining whether a given course of conduct or act is unfair under the ICFA, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. The published statement of factors considered by the Federal Trade Commission in measuring unfairness are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.

66. However, all three of these criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or, to a lesser extent, to the manner in which it meets all three.

67. Defendants' practices with respect to Plaintiff offend public policy, are unethical, oppressive, and unscrupulous (e.g., negative credit reporting, repeated credit inquiries, demanding

13

amounts known not to be owed, sending false correspondence, and threatening foreclosure), and cause substantial injury to consumers generally by demonstrating a failure to maintain reasonable procedures for fraud investigations and account servicing.

68. Defendants' unfair acts were committed in the course of Illinois trade and commerce and result from a purported Illinois consumer transaction.

69. Defendants acted unfairly and oppressively by failing to comply with their duty of good faith, failing to comply with their own alleged procedures, and failing to mitigate Plaintiff's damages.

70. Defendants acted with reckless indifference to Plaintiff's rights and lacked proper procedures and/or training to prevent and then mitigate the effects of identity theft or dispute resolution contacts from consumers, as demonstrated by the failures in Plaintiff's case.

71. Defendants continued making demands for payment of the debt, when it knew or should have known Plaintiff did not owe, and never had owed the debt, and these demands were made in the hope and with the intent that Plaintiff would rely on such representations and make a payment or allow the home to be foreclosed upon.

72. Defendants' continued payment demands and threats of foreclosure were not only unfair acts prohibited by the ICFA but also deceptive conduct. Defendants misrepresented the status of Plaintiff's account to Plaintiff and others (i.e., the credit reporting bureaus, insurance companies, property preservation agents, debt collection agents, and Plaintiff's other creditors), and threatened her with the loss of her home and tax reporting issues when such threats were false. Defendants' representations were material and involved efforts to collect significant sums of money and take the Plaintiff's family home. Defendants' false statements regarding Plaintiff's delinquency were repeated and made with reckless indifference.

14

73. Plaintiff has suffered significant emotional distress, aggravation, stress, embarrassment, and inconvenience resulting from her receipt of bills, collection letters, negative credit reporting, and credit inquiries on a debt that was never hers in the first place. Her privacy was invaded. She spent time, effort, and money resulting in pecuniary loss disputing the debt and reviewing her credit. She was improperly and repeatedly dunned for an additional purported indebtedness she did not owe. Her private, financial information was accessed by Defendants, their insurers, and their collection agents, putting Plaintiff at an even greater risk of future identity theft. Defendants' correspondence indicated she could be liable for tax consequences because of this transaction and there is a recorded fraudulent mortgage listed for her property. This damage was proximately caused by the Defendants' conduct, as alleged herein.

WHEREFORE, Plaintiff asks that this Court enter judgment in her favor and against Defendants Figure Lending, LLC and Specialized Loan Servicing LLC and award damages as follows:

(A) Actual and punitive damages under the ICFA;

(B) Declaratory and injunctive relief as appropriate;

(C) Reasonable attorney's fees, litigation expenses and costs incurred in bringing this action; and

(D) Any other relief this Court deems appropriate and just under the circumstances.

Respectfully submitted,

By: /s/ *Stacy M. Bardo*
Attorney for Plaintiff

Stacy M. Bardo
Bardo Law, P.C.
203 North LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 219-6980
stacy@bardolawpc.com

15

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff and the events described herein. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials.